# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

UNITED STATES OF AMERICA,       )
                                )
    Plaintiff,           )
                                )
v.                              )    No. 3:09-00167
                                )    JUDGE HAYNES
LUTHER T. SMITH, JR.,           )
                                )
    Defendant.           )

## M E M O R A N D U M

The United States filed this action against the Defendant Luther Smith, Jr., on two counts of tax evasion and one count of filing a false tax return.

Before the Court are the motion and renewed motion to quash a subpoena (Docket Entry Nos. 29 and 37) filed by Janet Smith, the Defendant's wife, based upon the adverse spouse testimonial privilege. Mrs. Smith seeks to quash subpoenas served upon her for testimony at the original and rescheduled trials. In essence, Mrs. Smith contends: that she is the Defendant's lawful wife; that she intends to preserve their marital relationship; and that to coerce her testimony would violate this privilege. The Government initially did not file a response, but filed a motion for a hearing. The Court granted the Government's motion for a hearing on these motions[1].

In a subsequent response[2], the Government contends that Mrs. Smith's sworn statements

---

[1] See United States v. Porter, 986 F.2d 1014, 1019 (6th Cir. 1993) (When faced with a marital privilege issue, "a district court should ...make a factual finding as to whether the spouses were permanently separated at the time of the questioned communication. This determination can be based upon facts elicited at a jury out hearing or at trial.").

[2] At the hearing on these motions, Smith's counsel stated that the Government provided him decisions that were inapposite. At the time of the hearing, the Government had not filed a

in her Internal Revenue Services' innocent spouse requests establish that Mrs. Smith has an adverse interest to the Defendant. The Government also argues that Mrs. Smith's innocent spouse requests establish damage to the Smiths' marital relationship and constitute a waiver of any marital privilege. The Government later clarified its reliance upon precedents under the marital communications privilege to establish a waiver of Mrs. Smith's adverse spousal testimonial privilege.

Mrs. Smith's reply is that her innocent spouse requests extend to civil tax liability and do not qualify as a waiver of her absolute adverse spousal privilege in this criminal proceeding.

## A. Findings of Fact

Janet Smith is the Defendant's wife of 39 years. The Smiths have never separated or divorced. They jointly provide the parenting for their three adult children. During their marriage, the Defendant lives and works at different locations, but returns to the couple's residence on alternate weekends. The Smiths also share holiday events with their family members. Mrs. Smith described their marital relationship as follows:

> [Mrs. Smith]. For most of my marriage my husband has traveled during the week and been home on the weekends. He has been working out of Nashville primarily for the last several years. We dated that way. He was home working out of the house when the children were small. But once Forrest started school, he set up an office here in Nashville.
>
> Q. During the period when the children were small and coming forward until

_____

memorandum in opposition to Mrs. Smith's motion citing those precedents for its position on the privilege issue. Under the Local Rule 7.01(a), a motion in a civil or criminal case requiring a resolution of legal issue must be accompanied by a memorandum of law. Mrs. Smith's motion and her attached letter to Government counsel cited legal authorities. Under Local Rule 7.01 (b), a responding memorandum of law in opposition is usually filed, but was not here. Given the difficult legal issues, the Court stated that a brief would be helpful and set deadlines for such filings. The Government then filed its legal memorandum on these motions.

today has that arrangement changed in any regard?

A.   He was in Missouri for awhile and he was home less often, but he was still home when his regular basis as weather and business permitted about every other week.

Q.   Have you and Mr. Smith functioned as a husband and wife throughout the duration of your marriage?

A.   Yes.

\* \* \*

Q.   And how long has that living arrangement been going on?

A.   Except when the children were little, the rest of our marriage, for 39 years I would have to get a calendar to go check. More than half for sure.

Q.   For more than half your marriage your husband has lived away from home?

A.   He has been away from home during the week.

Transcript of Hearing Held January 7, 2011 at pp. 2-3, 5. Mrs. Smith later testified:

Q.   Do you love your husband?

A.   Yes.

Q.   Do you want to preserve your marriage?

A.   I do.

Q.   Does your husband love you?

A.   I hope so. I think so. It seems to me so.

Id. at p. 4.

On November 20, 2006, Janet Smith, through her counsel, submitted among other forms

a verified "Innocent Spouse (Form 8857)" to the Internal Revenue Service ("IRS") in response to

the IRS's assessment of additional taxes on the Smiths for the tax period ending December 31, 2001. (Government's Exhibit 1A). On this form, Janet Smith stated that she was not legally separated from her husband and listed her address as 590 South Old Mall Road Crossville, Tennessee. Id. at p. 6. Janet Smith described the income for the year at issue as from "her Husband's insurance business," with which she had little or no involvement. Id. at p. 7. In addition, Janet Smith asserted for the tax period at issue, she "received no more than ordinary support and maintenance from her husband" during those periods (2001-02). Id. at p. 8. Moreover, Janet Smith asserts that: "Although they are still married, Taxpayer's husband lives and works primarily in a different city, and maintains a residence there. The Taxpayer is the primary caregiver for the mother-in-law who resides the Taxpayer. These living arrangements existed in 2001 as well." Id.

On December 1, 2006, again, through her counsel, Janet Smith submitted a verified "Innocent Spouse Relief form" to the IRS for the tax year ending December 31, 2001. As to the form's question of whether she and her husband lived together for the full tax year, Janet Smith responded: "No, my Husband lived and worked away much of the time during the year." (Government Exhibit 1B at 4). Mrs. Smith also answered that she did not review the Smith's joint 2001 return before signing. Id. In this form, Janet Smith identified the Smith's household account based upon average expenses. Id. at 5. As to her husband's business account, Janet Smith had not received any assets nor any business income that "was earned and spent solely in my husband's business; I know no details of expenditures." Id. at 6.

### B. Conclusions of Law

At issue in Mrs. Smith's motions is the adverse spousal privilege that bars testimony of

one spouse against another spouse in a criminal proceeding. Trammel v. United States, 445 U.S. 40, 53 (1990).

In United States v. Porter, 986 F.2d 1014 (6th Cir. 1993), the Sixth Circuit recognized two distinct marital testimony privileges.

> The adverse spousal testimony privilege protects one spouse from being compelled to testify against the other. This privilege may not be asserted after a marriage has been terminated.. Further, this privilege may be exercised only by the testifying spouse.
>
> The confidential marital communications privilege excludes confidential communications made by one spouse to the other during the marriage. This privilege is assertable by either spouse. Sims, 755 F.2d at 1241. The rationale for this privilege differs somewhat from that of the adverse testimony privilege. . . .

Id. at 1018 (citing, inter alia, United States v. Byrd, 750 F.2d 585, 590 (7th Cir. 1984) with other citations omitted).

"The two privileges each have different rationales." United States v. Brown, 14 F.3d 602, 1993 WL 533505, at *3 (6th Cir. Dec. 21, 1993). As to the adverse spousal testimonial privilege, Porter explained its purpose:

> The testimonial privilege looks forward with reference to the particular marriage at hand: the privilege is meant to protect against the impact of the testimony on the marriage. The marital communications privilege in a sense, is broader and more abstract: it exists to insure that spouses generally, prior to any involvement in criminal activity or a trial, feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law.

986 F.2d at 1018 (quoting Byrd, 750 F.2d at 590).

In Trammel, the Supreme Court reviewed the history of the adverse spousal privilege and ruled as follow:

5

Our consideration of the foundations for the privilege and its history satisfy us that "reason and experience" no longer justify so sweeping a rule as that found acceptable by the Court in <u>Hawkins v. United States</u>, 358 U.S. 74 (1958). Accordingly, **we conclude that the existing rule should be modified so that the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying**. This modification-vesting the privilege in the witness-spouse-furthers the important public interest in marital harmony without unduly burdening legitimate law enforcement needs.

Here, petitioner's spouse chose to testify against him. That she did so after a grant of immunity and assurances of lenient treatment does not render her testimony involuntary.

445 U.S. at 53 (emphasis added).

Yet, the Supreme Court explained that: "Neither <u>Hawkins</u>, nor any other privilege, prevents the Government from enlisting one spouse to give information concerning the other or to aid in the other's apprehension. It is only the spouse's testimony in the courtroom that is prohibited." <u>Id.</u> at 53 n.12. The adverse spousal privilege "only applies to testimony that is 'adverse' to the other spouse. <u>In re Grand Jury</u>, 111 F.3d 1083, 1087 (3d Cir. 1997) (citations omitted); <u>accord</u> <u>United States v. Gray</u>, 194 F.3d 1314, 1999 WL 801538, at *3 (6th Cir. Sept. 29, 1999) ("one spouse may not be compelled to testify against the other on any subject in a criminal proceeding"). Under this privilege, "the witness may be neither compelled to testify nor foreclosed from testifying." <u>United States v. Sims</u>, 755 F.2d 1239, 1240 (6th Cir. 1985). <u>Porter</u> held that the adverse spouse testimonial privilege was unavailable "after a marriage has been terminated." <u>Id.</u> at 1018.

As to waiver of the adverse spousal privilege, <u>Trammel</u> recognizes that the spouse may waive this privilege and may do so by agreement as in <u>Trammel</u>. 445 U.S. at 53. Courts have found waiver of this privilege where the wife agrees to testify in open court, <u>United States v.</u>

Walton, 946 F.2d 896, 1991 WL 209480, at *4-*5 (6th Cir. October 17, 1991); United States v. Jackson, 939 F.2d 625, 627 (8th Cir. 1991), or by plea agreement to cooperate with the government. United States v. Bad Wound, 203 F.3d 1072, 1075-76 (8th Cir. 2000). Waiver of this privilege must be done "knowingly, voluntarily and with sufficient specificity. . . ." United States v. Mitchell, 2009 WL 103610, at *5 (N.D. Iowa Jan. 15, 2009). In Mitchell, the court held that an implied waiver did not arise from the wife's grand jury testimony. Id. at *5, *6.

As to the Government's proof of the Smiths living apart, Mrs. Smith explained that this living apart for almost half of their marriage was due to the Defendant's work and her care of her mother-in-law. The Sixth Circuit observed that, "We do not believe that courts can or should 'assess the social worthiness of particular marriages or the need of particular marriages for the protection of the privilege.'" Sims, 755 F.2d at 1243 n.3 (quoting Appeal of Malfitano, 633 F.2d 276, 279 (3d Cir. 1980)). The Court concludes that the adverse spousal privilege bars testimony of Mrs. Smith.

Although Mrs. Smith asserts the adverse spousal privilege, the Government relies upon the waiver precedents involving the marital communications privilege. Porter identified three predicates for the assertion of this latter privilege:

> (1) At the time of communication there must have been a marriage recognized as valid by state law; (2) the privilege applies only to "utterances or expressions intended by one spouse to convey a message to the other," United States v. Lustig, 555 F.2d 737, 748 (9th Cir.), cert. denied, 434 U.S. 926, 98 S.Ct. 408, 54 L.Ed.2d 285 (1977) and 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1978); and (3) the communication must be made in confidence. See generally 2 Jack B. Weinstein and Margaret A. Berger, Weinstein's Evidence § 505[4] (1992).

986 F.2d at 1018. Yet this privilege is unavailable if the spouses are permanently separated. Id. at 1019.

In Brown, the Sixth Circuit held that the marital communication privilege could not exclude the Defendant's wife's testimony about Defendant directing her to call a certain person to inform the person that the Defendant was in trouble because:

> . . . . [T]he Browns were permanently separated at the time of the communication, and Porter holds that communications made after such a separation are not covered by the privilege. Second, the communication was not confidential and was not intended to be confidential; Donna Brown was instructed to relay the defendant's message to a third party.

Brown, 14 F.3d 602 at **3, 4. As applicable here, the evidence does not establish that the Smiths had a "permanent separation at the time of the" filing of the innocent spouse forms. In any event, Mrs. Smith's verified statements on her Innocent Spouse Requests do not reflect any confidential communication. Thus, Brown is factually inapposite.

The United States also relies upon United States v. Shaun L. James, 128 F. Supp. 2d 291 (D. Md. 2001). There, the Defendant was charged with assault of his wife and his "primary argument . . . is that the statements made by Mrs. Smith to Officer Okun are inadmissible because they are covered by the spousal testimony privilege [and] that the spousal testimony privilege applies not just to in court testimony by the witness souse, but prevents a third party from repeating an out-of-court statement made by the spouse." Id. at 293. The district court cited several circuit decisions that held that "the spousal testimony privilege should not be extended to preclude the testimony of a third party concerning out-of-court statements made by the Defendant's spouse where the testimony has sufficient indicia of reliability." Id. at 296. As to the spouse, the district court reasoned as follows:

> The stated purpose behind the spousal privileges is to keep family harmony and marital cohesion. Id. at 44, 100 S.Ct. 906. The courts do not want to turn husband against wife and break down their marital relationship. **However, the courts are**

8

**cognizant that if the marriage already is damaged and the witness-spouse wants to testify against the defendant-spouse, the trust and confidence in the marital relationship already is gone, and there is nothing of substance left to protect. Id. at 52-53, 445 U.S. 40. The damaged relationship will not be repaired by allowing the defendant-spouse to exclude testimony from the witness-spouse, who wants to testify. Allowing testimony to be excluded when the marital relationship already is damaged would serve no purpose other than circumventing the truth-finding process.** Id. That is why the Court in Trammel took the spousal testimony privilege away from the defendant-spouse and rested it solely in the testifying spouse. See id. "This modification-vesting the privilege in the witness-spouse-furthers the important public interest in marital harmony without unduly burdening legitimate law enforcement needs." Id. at 53, 100 S.Ct. 906.

Id. at 294 (emphasis added). This Court agrees, but here, Mrs. Smith does not want to testify and Mrs. Smith agrees that the Government may introduce her innocent spouse requests through IRS witnesses. (Transcript, Hearing on Motion to Quash Held January 7, 2011 at pp. 9-10). The proof here does not establish that the Smiths are permanently separated, Mrs. Smith's verified statements in her Innocent Spouse Forms are not confidential communications under the marital relationship privilege, and Mrs. Smith does not assert that privilege.

The Government's other cited decisions are also factually inapposite. United States v. Darif, 446 F.3d 701, 705-07 (7th Cir. 2000) (waiver for joint crime exception based on letter to "putative wife" where Defendant charged with marriage fraud as privilege requires a valid marriage); United States v. Burkhart, 501 F.2d 993, 995 (6th Cir. 1974) (waiver due to Defendant's introduction of "his wife's statements during cross examination of the Government witnesses"); United States v. Brown, 634 F.2d 819, 825-26 (5th Cir. 1981) (no due process violation where wife of prosecution's chief witness asserts marital privilege to avoid testifying at trial); United States v. Benford, 457 F. Supp. 589, 597-98 (E.D. Mich. 1978) (where Defendant testifies and takes advantage of wife's silence due to the privilege the waives the privilege as to

the subjects of his testimony); Morganroth & Morganroth v. DeLorean, 123 F.3d 374, 382 (6th Cir. 1997) (waiver of privilege at trial based on failure to object at wife's deposition).

The Court concludes that because the adverse spousal testimonial privilege serves a different purpose and arises under a differing rationale from the marital communication privilege, the Government's reliance on marital communication waiver doctrine in this case is misplaced.

An appropriate Order is filed herewith.

**ENTERED** this the _18_ day of January, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge